UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS GERALD MOUSSEAU,

       Plaintiff,                         CIVIL ACTION NO. 10-14430

      v.                                    DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF                     MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

      *A.*      *Proceedings in this Court*

On November 5, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and Disability Insurance benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 7, 8).

      *B.*      *Administrative Proceedings*

Plaintiff filed the instant claim on December 4, 2007, alleging that he became unable to work on April 11, 2007 (Tr. 12, 98-99). The claim was initially disapproved by the Commissioner on March 24, 2008 (Tr. 49-52). Plaintiff requested a hearing and, on December 7, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Curt Marceille,

who considered the case *de novo*. In a decision dated January 19, 2010, the ALJ found that Plaintiff was not disabled (Tr. 9-23). Plaintiff requested a review of this decision on March 12, 2010 (Tr. 6-8). The ALJ's decision became the final decision of the Commissioner on September 1, 2010, when the Appeals Council denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

II.    **STATEMENT OF FACTS**

    *A.    ALJ Findings*

Plaintiff was 48 years old on his alleged disability onset date (Tr. 22). Plaintiff's has past relevant work as a shipping checker, inspector, maintenance mechanic helper (oiler) and warehouse worker (Tr. 21, 144). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 11, 2007, Plaintiff's alleged disability onset date (Tr. 14). At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease (lumber disc disease with facet spondylosis, foraminal stenosis, and other degenerative changes of the spine); neuropathy (very mild sensory mononeuropathy at the right wrist); somatoform disorder; and osteoarthritis. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 14-17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except: [Plaintiff] must have the option to alternate

sitting and standing, as needed, for 30 minute intervals, provided he is not off task for more than ten percent of the work period; [Plaintiff] can occasionally reach overhead with his left hand; and [Plaintiff] is limited to unskilled work" (Tr. 17).  At step four, the ALJ found that Plaintiff could not perform his previous work as a shipping checker, inspector, maintenance mechanic helper (oiler) or warehouse worker (Tr. 21).  At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as information clerk (light) (2,445 jobs in the Lower Peninsula of Michigan Area); weigher (775 jobs); agricultural worker (6,945 jobs) or information clerk (sedentary) (2,485 jobs) (Tr. 22).

### B. *Administrative Record*

As discussed in greater detail below, Plaintiff only challenges the ALJ's discussion of Plaintiff's ability to maintain concentration, persistence or pace.  Therefore, only the medical evidence concerning Plaintiff's alleged mental impairments will be summarized:

The medical evidence related to the issue in this case – Plaintiff's alleged concentration problems – is sparse.  Plaintiff saw Ross Halpern, Ph.D., a psychologist and pain consultant, in May 2007.  Dr. Halpern diagnosed Plaintiff with a "somatoform disorder" (Tr. 192).[1]  According to Dr. Halpern, Plaintiff also reported depression and anxiety, although Plaintiff rated his depression as only "a 1 out of 10" (Tr. 190, 192).  Plaintiff told Dr. Halpern that his memory and concentration were good (Tr. 191).  Plaintiff further reported to Dr. Halpern that he was

---

[1] Somatoform disorders represent a group of disorders characterized by physical symptoms suggesting a medical disorder.  *See* Somatoform Disorders, available at, http://emedicine.medscape.com/article/294908-overview (last visited Dec. 19, 2011).  Somatoform disorders represent a psychiatric condition because the physical symptoms present in the disorder cannot be fully explained by a medical disorder, substance use, or another mental disorder.  The patient's physical symptoms can dramatically improve with successful treatment of the anxiety or mood disorder. *Id.*

"outgoing and the life of the party," and Dr. Halpern himself noted that Plaintiff was "quite pleasant" (Tr. 190, 193).

In July 2007, Plaintiff saw Tim Petrosky, a physician's assistant for Dr. Herbert Malinoff, for detoxification from OxyContin and Xanax (Tr. 186). Mr. Petrosky noted a possible mood disorder (Tr. 189), although Plaintiff stated that he had not followed up with Dr. Halpern (Plaintiff's psychologist) and Plaintiff stated that he believed any follow-up would show he was "normal" (Tr. 187). Plaintiff did well with his detoxification and, in December 2007, Plaintiff denied suffering from any depression or anxiety (Tr. 177).

A psychiatrist working for the state agency, Dr. Kokila Sheth, concurred with Dr. Halpern's diagnosis of somatoform disorder (Tr. 240); Dr. Sheth also noted the Plaintiff had mild depression (Tr. 246). Dr. Sheth found "moderate" limitation in the broad areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 244). Dr. Sheth concluded that Plaintiff retained the ability "to do simple work on sustin (sic) basis with adequite (sic) pace and endorence (sic). ADL [activities of daily living] not markedly limited to prevent working" (Tr. 246). Dr. Sheth did not recommend any socially-related limitations for Plaintiff (Tr. 246).

### C. *Plaintiff's Claims of Error*

Plaintiff has appealed only one issue to this Court – whether the ALJ erred by making a step three finding that Plaintiff suffers from "moderate difficulties" in concentration, persistence, or pace, while excluding a corresponding limitation from the hypothetical question and in the ultimate RFC assessment (Dkt. 7; Pl.'s Mot. Sum. J. at 7-9, 11–12). More specifically, Plaintiff asserts that the ALJ's limitation of "unskilled work" in the hypothetical question does not adequately account for Plaintiff's "moderate" limitation in concentration, persistence and pace.

### III.    DISCUSSION

#### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its

weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

  **B.**  ***Governing Law***

  The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

> can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted above, Plaintiff raises one argument on appeal – that the ALJ's hypothetical was inaccurate because it failed to specifically state that Plaintiff was "moderately" limited in concentration, persistence, or pace. Specifically, Plaintiff claims that the ALJ's hypothetical limitation of "unskilled" work did not adequately account for Plaintiff's moderate difficulties in maintaining concentration, persistence and pace.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Plaintiff's argument on appeal – that hypothetical limitations such as "simple," and "unskilled" fail to account for moderate concentrational deficiencies – is not uncommon and the case law in this District resolves it both ways. Indeed, there is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[2] However, there is also

---

[2] *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations."); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is

authority that has found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[3]

In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at * 10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383

---

'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job." (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[3] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations ... are not incompatible ."); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept.30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept.30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."). In a similar case, another court in this District explained:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010).

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence, and pace, such that the claimant had limitations in performing at a consistent pace. *Hess*, 2008 WL 2478325, at *7. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. The court in *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate

impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id.* at *8.

In this case, the ALJ's limitation of simple, routine, and repetitive work activities in a stable work environment accurately reflects Dr. Sheth's opinion as to Plaintiff's moderate limitations, which is the opinion that the ALJ gave most weight (Tr. 21). In addition to finding Plaintiff moderately limited with regard to concentration, persistence and pace, Dr. Sheth also found that Plaintiff retained the ability "to do simple work on sustin (sic) basis with adequite (sic) pace and endorence (sic). ADL [activities of daily living] not markedly limited to prevent working" (Tr. 246). This narrative description of Plaintiff's abilities is not significantly different from the hypothetical question utilized by the ALJ, which limited Plaintiff to "unskilled" work. As in *Hess* and *Lewicki*, this Court believes that the ALJ's finding of a moderate limitation in concentration, persistence, or pace has to be considered in conjunction with Dr. Sheth's broader conclusions, which suggest that Plaintiff could successfully perform unskilled occupational tasks.

Finally, as noted in Section II, B, above, the medical evidence concerning Plaintiff's ability to maintain concentration is sparse (Tr. 19). However, the ALJ noted that Plaintiff: "reported depression which he rated at level 1/10 in severity, due to economic stresses. [Plaintiff] also reported a good appetite and that he was sleeping well on Xanax. Furthermore [Plaintiff] reported having good self-esteem and a good memory, as well as good concentration and energy, except if overwhelmed by pain" (Tr. 19) (internal citations omitted). Likewise, the medical evidence concerning any social impairments is sparse. Plaintiff has not cited to any medical evidence suggesting that he cannot handle the social demands of unskilled work, but he did testify to engaging in the following activities: socializing with friends (Tr. 39), attending church

(Tr. 39), shopping at Walmart (Tr. 37) and traveling to annual family reunions (Tr. 40). As such, I find that the hypothetical question (and then the RFC) used by the ALJ is supported by substantial evidence in the record. Thus, the decision of the Commissioner should be affirmed.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Mark A. Randon
                                        Mark A. Randon
                                        United States Magistrate Judge

Dated: January 9, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 9, 2012, by electronic and/or ordinary mail.*

                                        *s/Melody Miles*
                                        *Case Manager to Magistrate Judge Mark A. Randon*
                                        *(313) 234-5542*